UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYLAND BRION COLES,

               Plaintiff,                     Case No. 20-12606

v.                                   District Judge Linda V. Parker
                                   Magistrate Judge R. Steven Whalen

SCION STEEL, INC., ET AL.,

               Defendants.

_____ /

## REPORT AND RECOMMENDATION

This is an employment case. On September 16, 2020, Plaintiff Gayland Brion Coles, an African-American male, 64, filed a *pro se* civil complaint under 42 U.S.C. § 1981 against Scion Steel, Inc.("Scion"), Micky Tschirhart ("Tschirhart"), Vice President of Scion, Tom McCall ("McCall"), General Plant Manger of Operations, and Jeff Michalski ("Michalski"), a supervisor, alleging a breach of a March 28, 2019 Confidential Settlement Agreement resolving all claims brought in a previous lawsuit. Case No. 18-13754. Plaintiff also alleges that subsequent to the resolution of the earlier lawsuit, Defendants retaliated against him for filing the prior lawsuit and gave non-African-Americans more favorable work positions and assignments.

Before the Court is Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 6) and Plaintiff's "motion for judgment on the pleadings and/or summary judgment and response" (ECF No. 10), which have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendants' motion be GRANTED in part and DENIED in part and that

-1-

Plaintiff's motion be DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Case No.  18-13754

On December 4, 2018 Plaintiff, proceeding *pro se,* filed his previous suit in this Court, alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*;  a hostile work environment in violation of 42 U.S.C. § 1981; and violations of the Age Discrimination in Employment Act ("ADEA") under 29 U.S.C. § 621 *et seq*.  Case No. 18-13754, (ECF No. 1).   On March 28, 2019, the parties entered into a "Confidential Settlement Agreement and Release of All Claims" ("Agreement").  The Agreement, attached to the Complaint in the present case, guaranteed Plaintiff:

> a.  Increased job responsibilities to include saw operation; more advanced gratings including jobs including coping, notches, radius; and review of sketches and drawings to determine job requirements and the best way to complete a job, as available, and in cooperation with his supervisor.
>
> b.  Appropriate training opportunities with respect to the increased job responsibilities as available.
>
> c.  A pay increase of $2.00 per hour.

 (ECF No.1, PageID.74), ¶ 5.   Plaintiff agreed that if he were "unable or unwilling to assume, or is unable to competently perform, the increased responsibilities as they become available, he [would] return to his responsibilities and pay rate that were in place as of the date he signed [the Agreement]." *Id.*  In the event that Plaintiff was unable to assume or competently perform the increased responsibilities, he was nonetheless entitled to the $2.00 per hour pay increase for the first 30 days after signing the agreement.  *Id.*  In exchange, Plaintiff agreed to drop "all claims, grievances and causes of action" arising or accruing "prior to the execution" of the Agreement.  (ECF No. 1, PageID.73) at ¶ 3. On April 9, 2019, the parties stipulated to dismissal of all claims with prejudice.  Case No. 18-13754, (ECF No.

26, PageID.105).   The next day, the District Court ordered the dismissal of all claims.  *Id.* (ECF No. 7).

### B.  The Present Case

Plaintiff filed the present action on September 16, 2020 (ECF No. 1).  He alleges that Defendants breached the Agreement by failing to promote him, and retaliated against him for asserting his constitutional/statutory rights by filing an Equal Employment Opportunity Commission ("EEOC") charge and for having brought the previous lawsuit, in violation of 42 U.S.C. § 1981 (ECF No. 1, PageID.5).  He also alleges that Defendants' failure to promote him following the execution of the agreement was motivated by racial animus.  *Id.*

The Complaint's allegations are summarized as follows.  Following the execution of the Agreement, Plaintiff did not receive "increased job responsibilities" or "appropriate training opportunities" as guaranteed by paragraph 5 (a) and 5(b) of the Agreement.  (ECF No. 1, PageID.13, ¶ 5)(*See* (ECF No. 1, PageID.73-74).   He was not alerted to "appropriate training" opportunities or openings for the position of "Burney operator" ("operator.")  *Id.* He notes that since the prior lawsuit was resolved, two openings for the operator position were filled by two white males who were also given two weeks of training by Defendant Scion.  *Id.*  Defendants Tschirhart and McCall were aware of the Agreement at the time that the white males were placed in the operator positions, but kept the job openings "silent and secret" until they had been filled.  (ECF No.1, PageID.15-16) at ¶ 9.  Plaintiff points out that since 2016, Scion has interviewed seven white males for the operator position, hired five, promoted one, and fired three, one of whom was rehired.  (ECF No. 1, PageID.24) at ¶ 22. Plaintiff has demonstrated "for months" to both Tschirhart and McCall that he is proficient in the operator position, and at least as early as 2016, both were aware he could perform the operator position.  (ECF No. 1, PageID.19, 25) at ¶¶ 19, 24. Plaintiff not only remained in

his previous position (welder), but was given exclusively "heavy duty" work orders in contrast to his white coworkers who rotated between heavy and light duty assignments. (ECF No. 1, PageID.17, 22, 34-35, 37) at ¶ ¶ 8, 20, 36-37, 40.  Plaintiff relates a March 20, 2020 exchange between himself and Defendant Michalski:  Plaintiff stated that he was tired, to which Michalski responded that he thought he had put Plaintiff "out to pasture." (ECF No. 1, PageID.16-17) at ¶ 9.  When Plaintiff replied "no way," Michalski stated that Plaintiff was "still strong as a bull." *Id.*  Plaintiff interpreted Michalski's comment to mean that Plaintiff was "an animal," noting that Michalski disregarded Plaintiff's  August 27, 2020 injury.  *Id.*, (ECF No. 1, PageID.23) at ¶ 21.

Following the execution of the Agreement, Plaintiff's requested training/advancement opportunities, to which McCall responded "these things take time," then at another point, asked Plaintiff how much longer he intended to work.  (ECF No. 1, PageID.49) at ¶ 66.  On July 22, 2020, McCall said "At a (sic) boy Gayland" in response to Plaintiff's statement that he was staying out of trouble.  (ECF No. 1, PageID.40) at ¶ 46.   Plaintiff alleges that the term "atta-boy" was used as a racial slur.   *Id.*

Plaintiff alleges that his unrelentingly heavy workload as a welder was assigned in retaliation for his EEOC complaint leading to the first lawsuit, as well as racial animus. (ECF No. 1, PageID.48) at ¶ ¶ 63-64.  He says that Defendants created a hostile work environment by paying him on Fridays rather than Thursdays in violation of the employer handbook, failing to respond to his grievance about having his work boots stolen, requiring him to take on the additional work responsibilities of a coworker who was "continuously drunk," and depriving him of overtime opportunities given to white employees  (ECF No. 1, PageID.49-50, 59-60, 63-64 ) at ¶¶ 69, 92, 96, 108, 110.  Plaintiff points out that Defendant Scion's own supervisory manual forbids retaliation in response to subordinate complaints.

-4-

(ECF No. 1, PageID.22, 39-41) at ¶¶ 18-19, 47.   He alleges that the three individual Defendants colluded to deprive him of the Agreement's guarantees. (ECF No. 1, PageID.41-42) at ¶ 51.  Plaintiff requests monetary damages.

## II.   STANDARD OF REVIEW

Challenges to the Court's subject matter jurisdiction are brought under Fed. R. Civ. P. 12(b)(1). The party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna–Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010).  Dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate where a plaintiff lacks standing. *Ward v. Alternative Health Delivery Systems, Inc.*, 261 F.3d 624, 626 (6th Cir. 2001).

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court,  construing the requirements of Fed. R. Civ. P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a

complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678 (*citing Twombley*, 550 U.S. at 555). Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]'–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Clapper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Elman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III.   DISCUSSION

Defendants argue first that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) because the Court does not have subject matter jurisdiction over the alleged breach of the March, 2019 settlement agreement ("Agreement") resulting in the dismissal of Plaintiff's prior action.  (ECF No. 6).  Aside from the lack of jurisdiction over the alleged breach, Defendants contend that Plaintiff has failed to state a  plausible claim of either retaliation or hostile work environment under § 1981. They also argue that Plaintiff's age-related allegations are not cognizable under 42 U.S.C. § 1981.  In Plaintiff's response (which also contains a motions for judgment on the pleadings and summary judgment) he argues, in effect, that he is entitled to judgment as a matter of law.  (ECF No. 10).

### A.  Jurisdiction Over the Settlement Agreement

Defendants are correct that standing alone, the Court does not have jurisdiction to enforce a settlement agreement.  "Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v Guardian Life Ins Co of Am*, 128 L Ed 2d 391; 511 US 375, 378; 114 S Ct 1673, 1675–76, 128 L.Ed.2d 391 (1994)(rejecting arguments that Fed. R. Civ. P. 41(a)(1)(ii), Rule 60(b)(6), or ancillary jurisdiction, without more, conferred subject matter jurisdiction to  enforce settlement agreement where court had entered a stipulation and order of dismissal after parties settled the action). "[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."  511 U.S. at 382, 114 S.Ct.

1673. Ancillary jurisdiction exists where "parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal-either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." 511 U.S. at 381, 114 S.Ct. 1673. Here, neither parties' notice of stipulated dismissal nor the court's order of dismissal contain the terms of the Agreement or the requirement that they comply its terms. Case No. 18-13754 (ECF Nos. 26-27).

However, in the present action Plaintiff not only alleges that Defendants breached the Agreement closing the earlier case, but that they retaliated against him from April, 2019 forward in violation of 42 U.S.C. § 1981 (ECF No.1, PageID.5). As discussed further below, Plaintiff's claim of fresh civil right violations (at least the ones viable under § 1981) provide an independent basis for jurisdiction. "A district court may enforce a settlement agreement that produced the dismissal of an earlier federal suit, even if it did not retain the authority to do so in a dismissal order, when the court has diversity or federal question jurisdiction over the breach-of-settlement-agreement controversy." *Cernelle v Graminex*, LLC, 437 F Supp 3d 574, 593 (E.D. Mich. 2020)(*citing Limbright v. Hofmeister*, 566 F.3d 672, 676 (6th Cir. 2009)), *amended on reconsideration in part* No. 03-10291, 2021 WL 1904499 (E.D. Mich. May 12, 2021).

Plaintiff's plausible allegations of civil right violations provide an independent basis for jurisdiction. "While Defendants' allegedly retaliatory conduct breached a term of the settlement agreement, it independently constitutes a deprivation of [the plaintiff's] rights as protected by §§ 1983 and 1985. We have original jurisdiction over the 1983 and 1985 claims, of course, which in turn gives us supplemental jurisdiction over the related breach of contract claim." *Rivera v State Ins. Fund Corp.*, 410 F Supp 2d 57, 60 (D.P.R. 2006); 28 U.S.C. §

1367 ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ."). Because the court enjoys original jurisdiction over the § 1981 claims, the fact that the disputed Agreement does not state that the settlement should be enforced in federal court is of no import. "Supplemental jurisdiction independently establishes a legal basis for our jurisdiction" over the settlement agreement. *Rivera* at 60. The finding that the court has supplemental jurisdiction over the enforcement of the Agreement is not incompatible with *Kokkonen*. "'[E]nforcement of the settlement agreement is for state courts, *unless there is some independent basis for federal jurisdiction*.'" *Id.* (*quoting Kokkonen*, 511 U.S. at 382, 114 S.Ct. 1673)(emphasis added).       M o r e o v e r , Federal courts "have asserted ancillary jurisdiction . . . to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent." *Kokkonen,* 511 U.S. at 379-380, 114 S.Ct.1676 (*citing Baker v. Gold Seal Liquors, Inc*., 417 U.S. 467, 469, fn. 1, 94 S.Ct. 2504, 2506, fn. 1, 41 L.Ed.2d 243 (1974)); *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)). The fact that  the newer claims represent  both a breach of the Agreement and an independent constitutional violation allows the Court to consider whether Defendants breached the agreement. "Both the breach of contract claim and the retaliatory conduct claim are based on the same nucleus of operative facts - defendants breached their contract and engaged in retaliatory conduct by failing to interview Plaintiff or give her good faith consideration for the Assistant Chief position - and would ordinarily be expected to be tried in one judicial proceeding." *McNeilly v City of Pittsburgh*, 40 F Supp 3d 643, 655 (W.D. Pa. 2014)(internal citations omitted).

As such this Court has subject matter jurisdiction over the allegations of retaliation allegedly perpetrated in response to Plaintiff's earlier EEOC charges and the now-dismissed

lawsuit.[1]

## B. The § 1981 Claims

"The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Noble v Brinker Intern, Inc*, 391 F3d 715, 720 (6th Cir. 2004);

### 1. Retaliation

It is well settled that § 1981 "encompasses claims of retaliation." *CBOCS W, Inc v Humphries*, 553 US 442, 457; 128 S Ct 1951, 1961, 170 L.Ed.2d 864 (2008); *see also Boxill v O'Grady*, 935 F3d 510, 519–20 (6th Cir. 2019)(Elements of a retaliation claim under § 1981 identical to requirements under Title VII). A retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc*., 515 F.3d 531, 538 (6th Cir. 2008).

Plaintiff's claims of retaliation are based on circumstantial evidence. The *prima facie* elements of a work-related retaliation claim based on circumstantial evidence are (1) the plaintiff engaged in protected activity; (2) the defendant(s) was aware of the protected

---

[1]

The Court is mindful that a party's failure to comply with the terms of a settlement agreement, with nothing more, does not state a claim of "retaliation." "'Failure to pay a judgment or comply with an injunction entered by a court or agency cannot usefully be called retaliation for filing the complaint; nor is slow payment or even non-payment a separate violation of federal law.'" *Kay v Bd. of Ed. of City of Chicago*, 547 F3d 736, 739 (7th Cir. 2008)(*quoting McGuire v. Springfield*, 280 F.3d 794, 797 (7th Cir.2002)(internal citations omitted)). "'An employer's action can be called retaliation only if it makes the employee worse off on account of the protected activity.'" *Id.* The contention that non-compliance with a settlement agreement, by itself, is "retaliation" "'is an argument that we have considered, and rejected, before, because it is nothing but an effort to avoid *Kokkonen* by a turn of phrase.'" *Id.* at 738. Here, Plaintiff not only alleges the absence of job opportunities promised by the Agreement, but also that his work condition has worsened since the prior lawsuit was closed.

activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) the adverse action was causally related to the protected activity. *Ladd v Grand Trunk W RR, Inc*, 552 F3d 495, 502 (6th Cir. 2009).

Plaintiff's filing of the previous EEOC charges and the subsequent, now-closed lawsuit alleging disparate treatment constitutes protected activity. *Laster v City of Kalamazoo*, 746 F3d 714, 730 (6th Cir. 2014). Defendants Scion, Tschirhart (Vice President of Scion), and McCall (General Plant Manger of Operations) were all named in the previous lawsuit and as such, were aware of the protected activity. While Michalski, Plaintiff's direct supervisor, was not named in the former lawsuit, Plaintiff alleges that Michalski (also referred to as "Jeff" in the Complaint) worked "in collusion" with Tschirhart and McCall by "bombard[ing]" Plaintiff (but not his coworkers) with "consistently . . . heavy duty work orders" following the signing of the Agreement. (ECF No. 1, PageID.16, 20, 22) at ¶¶ 9, 15, 20. He alleges that McCall did "the hiring and firing and everyday functioning doesn't happen without his prior knowledge or okay." (ECF No. 1, PageID.39-40) at ¶ 44. Plaintiff alleges further that Tschirhart and McCall were aware of Plaintiff's inordinately heavy work assignments which began approximately four months after the Agreement was signed and that the assignments were given in retaliation for the previous lawsuit . (ECF No. 1, PageID.36-37) at ¶ ¶ 39-40. Plaintiff alleges that Michalski was "fully aware" that his inordinately large workloads following the Agreement put a strain on Plaintiff's physical condition. (ECF No. 1, PageID.40-41), ¶¶ 47-49. The allegation that Michalski colluded with Tschirhart and McCall by giving Plaintiff more strenuous assignments than his coworkers in retaliation for the previous EEOC charges and lawsuit is adequate to survive a Rule 12(b)(6) motion.

Plaintiff's allegation that he was assigned an inordinately heavy workload after the

prior lawsuit was closed alleges an "adverse action." In the retaliation context, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S Ct 2405, 2415, 165 L Ed 2d 345 (2006)(internal quotation omitted). A change in work duties to assignments to more "arduous and dirtier" assignments can constitute an adverse action for purposes of a retaliation claim. *Id.* at 55, 126 S Ct, 2408.

The question whether Plaintiff can establish that the protected activity was the "but for" cause of his heavy workload is a closer question. "In order to establish a causal connection between the protected conduct and the adverse action, the plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209-210 (6th Cir.2010)(plaintiff's demotion six months after filing lawsuit for disparate treatment was adequate to show causal connection). "[T]emporal proximity between engaging in protected activity and suffering an adverse employment action that may create an inference of causation." *Id.* The Sixth Circuit "has found a causal link when the temporal gap is short, generally fewer than six months." *Akers v Co of Bell*, 498 Fed Appx 483, 487 (6th Cir. August 15, 2012)(*citing DiCarlo v. Potter*, 358 F.3d 408, 421–22 (6th Cir.2004), *Parnell v. West*, No. 95–2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997)("no inference of retaliation where the time lag was seven months")).

Defendants argue that the connection between the EEOC charges and Plaintiff's prior lawsuit, filed on December 4, 2018 and the allegedly retaliatory behavior beginning in August, 2019 is "'simply insufficient to show a causal connection based solely on a temporal-proximity theory.'" (ECF No. 6, PageID.171)  fn 5 (*citing Dye v. Office of the*

*Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012)).  However, case law from this district and elsewhere suggests that the temporal proximity is not measured from the commencement of the protected activity, but rather the time since the most recent protected activity.  *See Wood v Dow Chem. Co*, Fed Sec L Rep P 98320; 72 F Supp 3d 777, 795 (E.D. Mich. 2014)(temporal proximity requirement met while protected activity *began* four years before the plaintiff's termination, but she continued to engage in protected activity until shortly before her termination); *Taggart v United States Dept. of Justice*, No. CV 16-04040, 2017 WL 319062, at *12 (ED Pa, January 20, 2017)("Although Taggart filed his lawsuit against HUD in 2012, he was arguably engaged in protected activity throughout the duration of the litigation")(*citing Hill v. City of Scranton*, 411 F.3d 118, 133 (3d Cir. 2005)); *but see Smith v Allstate Ins Corp.,* No. 99 C 4240, 2001 WL 1104713, at *12 (ND Ill, September 18, 2001)("Court . . . does not view the two-year time period from the start of her prior law suit to its completion as an open time period of a 'protected activity'").

I adopt the reasoning set forth in *Wood* and *Taggart.*  There is no reason to conclude that the continuing process of filing an EEOC complaint and actually litigating a civil rights claim is any less  "protected activity" than the initial filing of the action.   At a minimum, Plaintiff has pled a temporal-based causal connection between the April 8, 2019 termination of the lawsuit and the inordinately heavy work orders beginning on August 26, 2019.

### 2.  Racial Animus

A plaintiff may establish a claim of workplace discrimination "either by introducing direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination." *Laster*, *supra,* 746 F3d at 726.  Plaintiff's claim that he failed to secure a desired position, while at the same time, two white, presumably less

qualified individuals were hired is based on an inference of discrimination.[2]  For purposes

of the present motion, Plaintiff must plausibly allege:

> (1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class.

*Id.* at 746 F3d 714, 726–27 (internal citations omitted)(*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Plaintiff has sufficiently alleged the elements of a racial discrimination claim.  He is a member of a protected class.  He states that although he performed his job satisfactorily (ECF No. 1, PageID.19, 25) at ¶¶ 19, 24, and was qualified for the position of Burney operator, two openings for the position occurring since he executed the Agreement were filled by white males.  (ECF No. 1, PageID.13) at ¶ 5; (ECF No. 1, PageID.73-74).

In the "failure to promote" context, a member of protected class must show that he "applied for and was qualified for a promotion," "was denied the promotion," and that the desired position was filled by someone of "similar qualification" not of the protected class *White v Columbus Metro Hous. Auth.*, 429 F3d 232, 240 (6ᵗʰ Cir. 2005)(*citing Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir.2000)).  Plaintiff alleges that he was qualified for the promotion to the apparently more skilled and less exertionally demanding job of

---

[2]
The claim that one of the Defendants said Plaintiff was "as strong as a bull" cannot be construed to state a claim of direct racial discrimination.  Likewise, while one Defendant allegedly said "atta boy," in response to Plaintiff's statement that he was staying out of trouble, "atta boy" is an idiom used to express encouragement or congratulations.  *See Booker v Johnsonville Sausage LLC*, No. 16-CV-1047-JPS, 2017 WL 3261708, at *5 (E.D. Wis. July 31, 2017)("'atta boy'" used "in a congratulatory mode" does not equate with the use of "boy" which has a racially derogatory inference); *Id.* at 7, fn 4 (the plaintiff's subjective belief that use of "atta boy" was racially offensive insufficient to support claim of discrimination).

Burney operator.  While he does not allege that he applied for position, he states that he was not alerted to the open positions until the jobs were already filled by non-protected individuals and that Defendants Tschirhart and McCall deliberately kept the openings secret until after they were filled.  (ECF No. 1, PageID.15-16) at ¶ 9.  The allegation that Defendants deliberately concealed job openings for which he was qualified for the purpose of filling the positions with non-protected individuals states a failure to promote claim.  In the instance that the employee was not notified of the position,  "the company is held to a duty to consider all those who might be reasonably interested in a promotion were its availability made generally known." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1022 (6th Cir. 2000).  Given that Plaintiff's former lawsuit was based on Defendants' failure to promote him, he has plausibly alleged that Defendants were aware that he was interested in the open positions.

### 4.  A Hostile Work Environment

To make a *prima facie* claim of a racially hostile work environment based on circumstantial evidence, a plaintiff must allege: "[H]e belonged to a protected group," "was subject to unwelcome harassment," "the harassment was based on race," "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and "the defendant knew or should have known about the harassment and failed to act."  *Williams v CSX Transp. Co, Inc*, 643 F3d 502, 511 (6th Cir. 2011).

As discussed in footnote 2, Plaintiff's claim of racial animus is based on circumstantial rather than direct evidence. "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l RR Passenger Corp v Morgan*, 153 L Ed 2d 106; 536 US 101,

-15-

116; 122 S Ct 2061, 2074 (2002)(internal citations omitted).

Here, Plaintiff alleges that he was assigned workloads for single-handed completion while workers of a non-protected class were allowed to complete comparable assignments in pairs or were given alternatively heavy and light assignments.  (ECF No. 1, PageID.32-37) ¶ 33-39.  He states that on numerous occasions between August, 2019 and March, 2020 he was given inordinately heavy assignments.  (ECF No. 1, PageID.33, 35-36, 50) at ¶¶ 36, 70, 74.  He states that Michalski  issued the work assignments and that he informed Michalski that the assignments were physically exhausting.  (ECF No. 1, PageID.52) at ¶ 74.   He alleges that he complained about his work load to McCall as well (ECF No. 1, PageID.37, 54) at ¶¶ 39, 80.   He alleges that Michalski responded to his complaints by stating at one point "I thought I put you out to pasture" and on another occasion, that Plaintiff was "getting old on [Michalski]" (ECF No. 1, PageID.35, 40) at ¶¶ 37, 46.  Plaintiff's claim that he was given physically demanding work assignments not given to his coworkers of a non-protected class over the course of nine months, and that Defendants were made aware that the assignments were physically exhausting adequately states a claim of "hostile work environment."[3]

### 5.  Age Discrimination

To the extent that the Complaint can be construed to allege age discrimination, such a claim is not cognizable under § 1981.  "The purpose of § 1981 is to guarantee equal rights to individuals of all races in making and enforcing contracts, and as such, the statute prohibits racial discrimination against whites and nonwhites alike." *Thorpe v Piedmont*

---

[3]While Defendants are correct that age-based hostile work environment claims are not cognizable under § 1981, Plaintiff appears to allege that the large assignments were not motivated by age-related discrimination *per se*, but rather, to get him to quit so that Defendants would not be required to fulfill their obligations under the Agreement in the earlier case.

-16-

*Airlines, Inc*, 926 F Supp 2d 453, 459 (N.D.N.Y. 2013)(*citing McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). But it is well settled "that Section 1981 does not prohibit discrimination" on the basis of age. *Anderson v Conboy*, 156 F3d 167, 170 (2nd Cir. 1998).

## C. Plaintiff's Response/Motion for Judgment on the Pleadings/Summary Judgment

To the extent that Plaintiff's response to the present motion also contains a motion for either judgment on the pleadings or summary judgment, the motion should be denied.[4] (ECF. No. 10).

Fed. R. Civ. P. 12(c) provides that "[after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analyzed under the same standards applicable to a motion to dismiss under Rule 12(b)(6). *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). Defendants filed the present motion in lieu of an answer. If the District Court adopts my recommendation to deny in part Defendants' motion, they will presumably be required to file an answer to the complaint. Because Defendants have not yet filed an answer, Plaintiff's motion should be denied.

For multiple reasons, Plaintiff's motion for summary judgment should also be denied. Under Fed. R. Civ. P. 56(c), summary judgment is appropriate where "the pleadings,

---

[4]

While *pro se* pleadings are to be construed liberally, motions filed within responses are disfavored. *United States v Deuise*, No. 17-20583, 2017 WL 6594221, at *3 (E.D. Mich. December 26, 2017)(Hood, C.J.)("Motions cannot be filed in responses"); *Darwich v City of Dearborn (Dearborn Police Dept)*, No. 10-14073, 2011 WL 1790437, at *1, fn 1 (E.D. Mich. May 10, 2011))(Cleland, J.)("court does not accept motions contained within response briefs"); *Moross Ltd Partnership v Fleckenstein Capital, Inc*, No. 01-74307, 2005 WL 1678187, at *8 (ED Mich. July 19, 2005)(Cohn, J.)("cross motion . . . contained in . . . response to defendants' motion for summary judgment . . . does not comply with the Court's motion practice guidelines.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Defendants have not yet filed an answer.  No discovery has not been ordered, much less completed.    Aside from that, Plaintiff faces a steep burden to show that he is entitled to summary judgment as a matter of law.  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v United States*, 799 F2d 254, 259 (6ᵗʰ Cir. 1986)(*quoting* W. *Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)).  While Plaintiff has made plausible allegations of civil rights violations, the question of whether he is entitled to judgment as a matter of law is grossly premature.  Accordingly, his motion for summary judgment should be denied.

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' motion [ECF No. 6] be GRANTED IN PART AND DENIED IN PART as follows (1) that the motion for dismissal under Fed. R. Civ. P. 12(b)(1) be DENIED; (2) that Defendants' motion for dismissal under 12(b)(6) DENIED as to the claims of retaliation, race, and hostile work environment; and (3) that the motion for dismissal be GRANTED as to the claim of age discrimination, which is not cognizable under § 1981.

I further recommend that Plaintiff's "motion for judgment on the pleadings and/or summary judgment and response" [ECF No. 10] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 15, 2021, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Hon. R. Steven Whalen

-19-