UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYLAND BRION COLES,

Plaintiff,

v.

SCION STEEL, INC., *et al.*,

Defendants.

_____/

Case No. 20-12606

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 80).

This matter is currently before the Court regarding the Defendants' motion for summary judgment. (ECF No. 80). This case has been referred to the undersigned for all pretrial matters. (ECF No. 39).

## I.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### a.   *Standard of Review: Summary Judgment*

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

1

judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a

2

reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema*, *N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir.

2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

    *b. Factual Background*

On May 8, 2023, Defendants' Scion Steel, Inc., Micky Tschirhart, Tom McCall, and Jeff Michalski moved for summary judgment.  (ECF No. 80).  Plaintiff's First Amended complaint was brought under 42 U.S.C. § 1981(a) and alleges race discrimination, retaliation, breach of settlement agreement, and hostile work environment.  (ECF No. 57). [1]  Plaintiff's claims in this lawsuit arise out of a breach of contract settling an earlier lawsuit in Eastern District of Michigan case number 18-13754.  (*Id.* at PageID.1073).  The parties to the earlier lawsuit entered a settlement agreement on March 28, 2019, ("the settlement agreement") and Plaintiff now alleges a breach of this contract, discrimination, and retaliation.  (*Id.* at PageID.1073-74).

More specifically, Plaintiff alleges Defendants failed to perform under the terms of the settlement agreement when they did not alert Plaintiff to open positions and failed to give Plaintiff the "opportunity to succeed or fail where appropriate training was opened from the non-filled Burney Operator's position[.]"

---

[1] On July 6, 2022, Plaintiff filed a motion to amend and accompanying proposed amended complaint.  (ECF No. 57).  The Court granted Plaintiff leave to amend and ECF No. 57 is the operative complaint.  (ECF No. 69).  The amended complaint consists of 172 numbered paragraphs that are not in ascending numerical order, presumably because a number of the pages are not in numerical order.  (ECF No. 57).  The Court reads the amended complaint following the ascending numerical order of the paragraphs of the complaint starting at paragraph one.  (*Id.*).

(*Id.* at PageID.1074). Plaintiff asserts that two white men were hired for the vacant Burney operator position. Plaintiff alleges Defendants denied him training which foreclosed the Burney operator position to Plaintiff "based on race discrimination and retaliation[.]" (*Id.*).

Defendants allege that, other than Plaintiff's speculation, there is no record evidence that he has been treated differently because of his race or because he filed another lawsuit against Defendant Scion Steel. (ECF No. 80, PageID.1744) Plaintiff has worked at Defendant Scion Steel for more than nine years. (*Id.*).

On February 12, 2018, Plaintiff filed a charge with the EEOC, claiming race discrimination and retaliation, allegedly based on a failure by Scion to permit him to work in the plate division. (*Id.* at PageID.1746). The EEOC dismissed the charge about seven months later after determining no violation had occurred. (*Id.*). Plaintiff then filed a *pro se* lawsuit against Scion alleging age and race discrimination, retaliation, and a hostile work environment under Title VII. (*Id.*). The parties settled on March 28, 2019. (*Id.* at PageID.1747).

The terms of the settlement were that Scion would provide:

a. Increased job responsibilities to include saw operation, more advanced grating jobs including coping, notches, radius; and review of sketches and drawings to determine job requirements and the best way to complete a job, as available, and in cooperation with his supervisor.
b. Appropriate training opportunities with respect to the increased job responsibilities as available.
c. A pay increase of $2.00 per hour. Employee understands and agrees

5

that if he is unable or unwilling to assume, or is unable to competently
perform, the increased responsibilities as they become available, he
will return to his responsibilities and pay rate that were in place as of
the date he signed this Agreement.

(*Id.*).  Following the dismissal of his lawsuit, Plaintiff received the pay increase as

specified under the settlement.  (*Id.*).  Defendants provide a breakdown of

Plaintiff's pay rate from 2015 to 2022 which reflects that Plaintiff received several

raises in pay after March 2019.  (ECF No. 80-7, PageID.1830).  Defendants allege

Plaintiff received training opportunities including grating paper work and work

flow training.  (ECF No. 80, PageID.1747).  Defendants assert that Plaintiff was

assigned saw operations on at least one occasion and at other times was asked to

perform notching tasks and reviewed sketches and drawings.  (*Id.*).  Plaintiff was

also purportedly trained on a new saw and received regular pay increases.  (*Id.*).

During the period from the settlement until fall 2020 Plaintiff was not disciplined,

except for a minor counseling for attendance violation.  (*Id.*).

Purportedly Defendant Scion's plant manager asked Plaintiff if he would be

interested in a position opening on a new CNC laser machine in May 2021.  (*Id.* at

PageID.1749).  Although Plaintiff purportedly told the manager he would have to

think about it, Plaintiff eventually expressed interest.  (*Id.*).[2]  Even so, Plaintiff

---

[2] The Court notes that Defendants' citations to the record are unclear and unhelpful.
Defendants' 'citations' to "[Pl. 62-63]" or "[Pl. 57-58]" are woefully inadequate.  (ECF No. 80,
PageID.1749).  The undersigned presumes these citations are referring to Plaintiff's deposition,
which is exhibit C to Defendants brief.  Counsel should cite the exhibits referenced and attached
in future filing for the sake of clarity rather than using confusing and ambiguous shorthand.

went on extended medical leave from August 2021 until December 2021.  (*Id.*).
The CNC position was filed by another individual, who is African American.  (*Id.*).

Prior to taking medical leave, Plaintiff received training in additional areas
of overhead crane operator and forklift training.  (*Id.*).

In March 2022, Plaintiff received a positive performance review and on May
10, 2022, was purportedly offered the opportunity to train on the laser
machine/Burney.  (*Id.*).  Defendants allege that Plaintiff refused this offer.  (*Id.*).
Plaintiff asked for and received a raise in August 2022.  (*Id.*).

### c. Breach of Contract Claim

As to Plaintiff's claim of breach of the settlement agreement, Defendants
argue that Plaintiff cannot show that the settlement agreement was breached.  (*Id.*
at PageID.1751).  A settlement agreement is a contractual agreement and
Plaintiff's claim is, therefore, a breach of contract claim.

In order to establish a breach of contract claim under Michigan law, a
plaintiff must establish that "(1) there was a contract; (2) which the other party
breached; and (3) thereby resulting in damages to the party claiming breach."  *El-
Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 672 (Mich. 2019) (quoting
*Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014))
(internal quotations omitted).

Under Michigan law, "[t]he primary goal of contract interpretation is to honor the intent of the parties." *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666–67 (Mich. Ct. App. 2000) (citation omitted). In order to achieve that goal, courts must read the contract as a whole. *Id.* If the contractual language is "clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 514 N.W.2d 185, 188 (Mich. Ct. App. 1994). Michigan "[c]ourts are governed by what the parties said and did, and not merely by their unexpressed subjective intent." *Fletcher v. Bd. of Ed. of Sch. Dist. Fractional No. 5, Brighton & Genoa Tps., Livingston Cnty.*, 35 N.W.2d 177, 180 (Mich. 1948).

Defendants argue that the contract is unambiguous and Plaintiff's interpretation of the contract conflicts with the plain language of the contract. (ECF No. 80, PageID.1752). Plaintiff's contention appears to be that the terms of the settlement agreement should be read such that Defendant Scion needed to offer him Burney operator positions when they became available, but Defendants argue the contract does not require such action. (*Id.*). Defendants assert that the agreement requires Defendant Scion to provide "increased job responsibilities" including "saw operation; more advanced gratings including jobs [with] coping, notches, radius; and review of sketches and drawings to determine job requirements. . . *as available*" and "appropriate training with respect to increased

8

job responsibilities *as available*."  (*Id.*) (emphasis original to Defendants' brief, emphasis added to language of the settlement).

Defendants allege that Plaintiff "admits that the language of the Agreement does not require Scion to offer him training or assignment to the Burney position, and it does not prohibit Scion from hiring other workers for the Burney position." (*Id.*) (citing "[Pl. 119, 121]").  Insofar as Defendants appear to be referring to page 119 and 121 of Plaintiff's deposition transcript attached as exhibit C, Plaintiff admitted that the agreement did not require Defendant Scion to alert him to open positions or prevent Defendant Scion from hiring other individuals for an open position.  (ECF No. 80-4, PageID.1806).  In the same deposition, Plaintiff admitted that it is Defendant Scion's responsibility to determine when work is available to be offered to employees.  (*Id.* at PageID.1805).  Defendants argue that Plaintiff's claim fails because the agreement did not require that he be placed into a Burney operator position.  (ECF No. 80, PageID.1752).

As to the other obligations contained in the contract, Defendants argue that Plaintiff admits he received additional training, more job responsibilities, and a raise.  (*Id.* at PageID.1753) (citing "[Pl. 56-58, 111, 115-116]").  At his deposition Plaintiff stated that he received grating paper work & flow training, overhead crane operator training, and forklift operator training.  (ECF No. 80-4, PageID.1790).

9

Additionally, in May 2022 when Plaintiff was offered a transfer to a laser operator role, he declined the transfer.  (ECF No. 80-4, PageID.1791).

> The terms of the settlement were that Scion would provide:
>
> a. Increased job responsibilities to include saw operation, more advanced grating jobs including coping, notches, radius; and review of sketches and drawings to determine job requirements and the best way to complete a job, as available, and in cooperation with his supervisor.
> b. Appropriate training opportunities with respect to the increased job responsibilities as available.
> c. A pay increase of $2.00 per hour. Employee understands and agrees that if he is unable or unwilling to assume, or is unable to competently perform, the increased responsibilities as they become available, he will return to his responsibilities and pay rate that were in place as of the date he signed this Agreement.

(ECF No. 80, PageID.1747).  In his reply brief, Plaintiff largely reiterates his arguments that Defendant Scion remained silent and intentionally withheld all promotional opportunities from him.  (ECF No. 91, PageID.1901).  Yet Plaintiff also seems to be asserting that Defendant Scion had a "dire need for burney machine work order completions" and "gave [Plaintiff] the opportunity."  (*Id.* at PageID.1903).  Plaintiff appears to be conceding that he received an opportunity on the Burney machine from Defendant Scion.

Plaintiff additionally argues that Defendants "effectively rendered the contract null and void and incapable of being satisfied" when Defendant Scion hired a white male grating fitter welder in September 2022 despite unambiguous language in the contract about training Plaintiff in the grating department.  (*Id.* at

PageID.1906).  The gravamen of Plaintiff's argument seems to be that Defendants have breached the contract because they have failed to perform by promoting Plaintiff.  (*Id.* at PageID.1908).

As noted, the terms of the agreement requires Defendant Scion to provide "increased job responsibilities" including "saw operation; more advanced gratings including jobs [with] coping, notches, radius; and review of sketches and drawings to determine job requirements. . . *as available*" and "appropriate training with respect to increased job responsibilities *as available*."  (ECF No. 80, PageID.1752) (emphasis original to Defendants' brief, emphasis added to language of the settlement).  The contract does not define what "as available" means under the contract.  In any event, the contract lacks language *requiring* Defendants to promote Plaintiff.  (*Id.*).  Moreover, when Plaintiff was offered a transfer to a laser operator role, he declined the transfer.  (ECF No. 80-4, PageID.1791).  Plaintiff's own sworn testimony at his deposition supports that he has received training and increased job responsibility.  (*Id.* at PageID.1790, PageID.1805).

If the contractual language is "clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense."  *Mich. Mut. Ins. Co. v. Dowell*, 514 N.W.2d 185, 188 (Mich. Ct. App. 1994).  The unambiguous language of the contract does not support Plaintiff's proposed interpretation. Defendants have presented evidence, which Plaintiff does not contest, that they

11

have not breached the terms of the contract. Defendants have carried their burden to prove there is no dispute of material fact as to what actions Defendants have taken to perform under the settlement agreement, and the burden therefore shifts to Plaintiff to set forth specific facts showing a triable issue as to whether Defendants have breached the contract. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute."). All Plaintiff has done is present his allegations and preferred interpretation and, as such, has provided no evidence to defeat the motion for summary judgment.

Defendants' motion for summary judgment is **GRANTED** as to the claim of breach of contract.

### d. Failure to Promote Claim

To the extent that Plaintiff's complaint can be taken as an allegation that Defendants failed to promote him, Defendants argue they are entitled to summary

judgment because Plaintiff cannot show that a failure to promote him was because of his race.

"In the context of a Title VII discrimination claim,[3] an adverse employment action is defined as a 'materially adverse change in the terms or conditions' of employment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (quoting *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotations omitted) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Additionally, an "adverse employment action 'requires an official act of the enterprise, a company act.'" *Id.* (quoting *Burlington Indus*, 524 U.S. at 762).

To establish an adverse employment action based on failure to promote, "the plaintiff must be (1) a member of a protected class; (2) who applied for and was qualified for a promotion; (3) who was considered for and denied a promotion; and (4) other similarly qualified employees who were not members of the protected

---

[3] "We review claims of alleged race discrimination brought under § 1981 and the Elliott–Larsen Act under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964 ("Title VII")." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 418 (6th Cir.1999); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1311 (6th Cir.1989)).

13

class were given promotions." *Watson v. City of Cleveland*, 202 F. App'x 844, 854–55 (6th Cir. 2006) (citing *Allen v. Mich. Dep't. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000). "[I]n order to satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) (further citation omitted).

Defendants argue that Plaintiff cannot establish a prima facie claim of discrimination because the persons hired from outside his protected class had significantly greater experience on the machine and other members of Plaintiff's protected class were hired for the position. (ECF No. 80, PageID.17554-55). Two Caucasian workers were hired as Burney operators, Matthew Lahti and Matthew Graham. (*Id.* at PageID.1755). Each had more than 20 years of prior Burney experience while Plaintiff had only a few months of such experience. (*Id.*). As Plaintiff and the non-protected persons who were hired did not have similar qualifications, Defendants assert Plaintiff cannot carry his prima facie burden. (*Id.*).

In his reply brief, Plaintiff argues that management at Defendant Scion saw firsthand that he was proficient at operating the Burney machine and that he

successfully completed work orders when given to him.  (ECF No. 91, PageID.1904).  Plaintiff does not address that the white individuals hired by Defendant Scion had significantly more experience than Plaintiff even if Plaintiff was proficient at operating the Burney machine.  The undersigned suggests that because Plaintiff cannot prove that other similarly qualified employees who are not members of the protected class were hired over him, he has not carried his prima facie burden on this claim.

Defendants next argue that Plaintiff's claim fails as to the fourth element because several African American individuals have been hired to operate the Burney laser and plasma machinery.  Defendants indicate that during 2021 three African American Burney operators were hired by Defendant Scion and that another African American employee has worked as a Burney operator at Scion since 2011.  (ECF No. 80, PageID.1755).  Defendants also note that Plaintiff *himself* was offered the Burney position in May 2022, but that Plaintiff denied the promotion.

Defendants have articulated legitimate, nondiscriminatory reasons for the employment decision, therefore, Plaintiff would need to put forth sufficient evidence "to establish that Defendants' stated reasons were merely pretextual." *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *5 (6th Cir. June 8, 2023) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012)).

Defendants have offered evidence sufficient to prove there is no dispute as to the material facts and Plaintiff has offered no evidence to rebut the motion for summary judgment.  As a result, the undersigned recommends the motion for summary judgment be **GRANTED** as to the claim for failure to promote.  (ECF No. 80).

### e. Retaliation Claim

As to Plaintiff's claim of retaliation, Defendants argue that Plaintiff cannot prove retaliation because he cannot prove but for causation.

The elements for retaliation under § 1981, Title VII, and the ELCRA are the same.  *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013) ("The ELCRA analysis for retaliation claims is identical to the Title VII analysis."); *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) ("The elements of a retaliation claim under § 1981 are the same as those under Title VII.").  To establish a prima facie case of retaliation, a plaintiff must establish that: (1) "he engaged in an activity protected by [§ 1981, Title VII, and the ELCRA]"; (2) "his exercise of such protected activity was known by the defendant"; (3) "thereafter, the defendant took an action that was 'materially adverse' to the plaintiff"; and (4) "a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

Retaliation claims under both Title VII and § 1981 and ELCRA require but-for causation. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020)).

The framework for analyzing retaliation claims depends on whether there is direct or indirect evidence of retaliation. *Perkins v. Detroit Salt Co.*, No. 20-11211, 2021 WL 5989022, at *9 (E.D. Mich. Dec. 17, 2021).  Plaintiff has not presented any direct evidence of retaliation.  When there is only circumstantial evidence of retaliation, courts use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to analyze retaliation claims. *Id.*

Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of demonstrating a prima facie case of retaliation. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (a "plaintiff may prove retaliation either through direct evidence or circumstantial evidence").  If he succeeds, Defendants have the burden of producing evidence that they terminated Plaintiff for a non-retaliatory reason. *Id.*  If they succeed, then Plaintiff can try to show that their reason is merely pretext for retaliation. *Perkins*, 2021 WL 5989022, at *9.

Plaintiff has alleged that his protected activity is the filing of his EEOC charge. (ECF No. 80-4, PageID.1809).  Plaintiff has suggested that he was given heavy-duty work orders after he signed the settlement agreement, which he alleges are retaliatory. (*Id.* at PageID.1810; ECF No. 57).  Defendants argue that Plaintiff cannot prove causation because he cannot prove the heavier work orders would not

17

have occurred but for his protected activity, as is required. (ECF No. 80, PageID.1757).

Defendants note that Plaintiff's protected activity occurred long before the alleged retaliation. (*Id.*). His EEOC charge was filed in February 2018 and his original lawsuit in September 2018. (*Id.*). This lawsuit was filed September 16, 2020. (ECF No. 1). Defendants argue that the seven months between his EEOC charge and his workload increase in March 2019 is too long to establish a causal connection. (ECF No. 80, PageID.1757).

For causation purposes, "temporal proximity is measured from the time an employer learns of a protected activity to the time of the subsequent adverse employment action." *Garrett v. Mercedes-Benz Fin. Servs. USA*, 331 F. Supp. 3d 699, 719 (E.D. Mich. Sept. 13, 2018). The Sixth Circuit "requires a very brief interval between protected activity and adverse action before [a court] permits a plaintiff to demonstrate causation *solely* on the basis of temporal proximity." *Sharp v. Aker Plant Servs. Grp.*, 600 F. App'x 337, 341 (6th Cir. 2015) (emphasis added).

A lengthy period between the protected activity and adverse action does not foreclose finding causation. But "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [their] claim with 'other evidence of retaliatory conduct to establish

causality.'" *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

The Sixth Circuit has routinely found that intervals longer than two or three months are, without more, insufficient to establish causation. *See, e.g., Kean v. IT-Works*, 466 F. App'x 468, 471 (6th Cir. 2012) (finding that two-and-a-half months was not enough) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) (holding that one month could not support a causal inference without more); *Mickey*, 516 F.3d at 524 (collecting cases); *but cf. Shefferly v. Health All. Plan of Michigan*, 94 F. App'x 275, 285 (6th Cir. 2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation").

Plaintiff's protected activity occurred long before the alleged retaliation. (ECF No. 80, PageID.1757). His EEOC charge was filed in February 2018 and his first lawsuit was filed in September 2018. (*Id.*). Plaintiff alleges his workload increased in March 2019 after the settlement agreement was signed. (ECF No. 57, PageID.1077). All Plaintiff offers in support of causation is the temporal proximity between his EEOC complaint and the alleged retaliatory conduct, but because of the significant length of time between the two events, Plaintiff must

present other evidence.  Plaintiff's response does not offer any additional evidence of any retaliatory motive.  (ECF No. 91).

Plaintiff also testified at his deposition that he received heavy-duty assignments prior to executing the agreement and that at times after the agreement, he received lighter work.  (ECF No. 80-4, PageID.1811).  Defendant Micky Tschirhart's affidavit indicates that at Scion, workload fluctuates based on the volume of work orders.  (ECF No. 80-3, PageID.1774).  He asserts that when there is an increase in work orders, all employees are assigned increased work and when there is a decrease in work orders, all employees see a decrease in workload.  (*Id.*).  At Plaintiff's November 2022 deposition, Plaintiff even conveyed that the workload had balanced out.  (ECF No. 80-4, PageID.1810).

In terms of how Defendant Scion manages assigning workload, Defendant Micky Tschirhart's affidavit states that employees at Scion are not expected to complete a specific volume or weight of work and there are no 'piece' goals an employee is required to meet.  (ECF No. 80-3, PageID.1774).  Tschirhart notes that "employees are expected to complete a reasonable amount of work each shift" and that if a work order cannot be completed in a single shift, the next shift will continue the work.  (*Id.*).  A work order will be worked on by each shift, across potentially several shifts, until the work order is complete.  (*Id.*).  During much of 2020, 2021, and 2022 Plaintiff was the only welder staffed on the afternoon shift.

(*Id.*).  Defendants argue that because Plaintiff was the only welder on the afternoon shift that his conclusory allegations that he was specifically chosen for heavy-duty assignments lack merit.  (ECF No. 80, PageID.1758).  Defendants assert that Plaintiff was not required to complete all the work order on his shift and that if the work order could not be completed, the work order would flow to the next shift.  (*Id.*).  Defendants argue that Plaintiff could determine his own workload, as long as he acted reasonably.  (*Id.*).

Defendants argue that Plaintiff offers no evidence to demonstrate that his workload results from retaliation and Plaintiff admits that he does not know who at Scion determines work assignments.  (*Id.* at PageID.1759).  Defendants assert therefore that Plaintiff can only speculate on whether the person who assigns work was aware of Plaintiff's EEOC charge.  (*Id.*).  To retaliate one must know about the protected activity.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (noting a plaintiff's exercise of a protected activity must be known by the defendant).

Defendants also note that Plaintiff offers no support for his assertion that his workload generally and unreasonably exceeded that of other employees.  (ECF No. 80, PageID.1759).  They assert that Plaintiff's allegations of retaliation are conjecture and insufficient to survive summary judgment.  (*Id.*).

21

In reply, Plaintiff simply reiterates the facts alleged in his amended complaint or includes bare assertions of law. (ECF No. 91). Insofar as any of the arguments in Plaintiff's response respond to those advanced by the Defendants, the Court cannot parse a coherent argument from Plaintiff's brief. (*Id.*). The undersigned shall summarize what look like the most relevant portions of Plaintiff's arguments. Plaintiff argues that the claim that business ebbs and flows is false and misleading because the plate division and the grating division are two separate divisions within the facility. (*Id.* at PageID.1911). Plaintiff does not explain how the plate division and grating division being separate divisions within the facility relates to the workload. Plaintiff again argues that he was placed on heavy duty work orders in retaliation, but does not specify any other facts to support that his workload was retaliatory. (*Id.*).

Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of demonstrating a prima facie case of retaliation. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (a "plaintiff may prove retaliation either through direct evidence or circumstantial evidence"). To establish a prima facie causal connection the plaintiff "must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (quoting *Abbott v.*

*Crown Motor Co.,* 348 F.3d 537, 543 (6th Cir. 2003)).  When there is not close

temporal proximately between the adverse employment actions and the protected

activity, other evidence is required.  *Id.*; *Mickey v. Zeidler Tool & Die Co.,* 516

F.3d 516, 525 (6th Cir.2008).  Plaintiff has not done so here.

The undersigned suggests that summary judgment is appropriate as to the

claim of retaliation because Plaintiff has failed to establish an essential element of

his case.  Thus, Defendants' motion for summary judgment should be **GRANTED**

on this claim.  (ECF No. 80).

### f.   Employment Discrimination Claim

As to Plaintiff's claim of employment discrimination, the undersigned

suggests summary judgment should be granted.

A plaintiff may establish a prima facie case of employment discrimination

by showing that "(1) he is a member of a protected class; (2) he suffered an

adverse employment action; (3) he was qualified for the position in question; and

(4) he was treated differently from similarly situated individuals outside of his

protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).

"The elements of a retaliation claim are similar but distinct from those of a

discrimination claim." *Laster*, 746 F.3d at 730.

Defendants argue that Plaintiff admits that he has no evidence that

he was treated differently than similarly situated individuals outside his protected

class.  (ECF No. 80, PageID.1760).  Defendants note that with respect to assignment to the Burney/laser/plasma operator position, Plaintiff's testimony is that he himself was offered that position and other African Americans were hired for those jobs.  (ECF No. 80-4, PageID.1791-93, PageID.1809).  Defendants also assert that Scion had a legitimate, nondiscriminatory reason for placing other individuals in the roles that Plaintiff was interested in: Plaintiff was not equally or more qualified than the other individuals hired.  (ECF No. 80, PageID.1761).

The undersigned suggests that Plaintiff has identified no individuals who are similarly situated who are outside of his protected class.  As noted earlier, the two Caucasians workers hired as Burney operators, Matthew Lahti and Matthew Graham, each had more than 20 years of Burney experience while Plaintiff had only a few months.  (*Id.* at PageID.1755).  Plaintiff and the non-protected persons who were hired did not have similar qualifications, so they are not similarly situated.  Plaintiff has not established an essential element of this claim, therefore summary judgment is appropriate.  Plaintiff's reply brief contains no factual allegations which counter this analysis.  (ECF No. 91).  The undersigned recommends the Defendants' motion for summary judgment be **GRANTED** on this claim.  (ECF No. 80).

g.  *Hostile Work Environment Claim*

24

As much as Plaintiff's claims could be interpreted as a claim of a hostile work environment based on race, Defendants argue that claim also fails.

To succeed on a claim of racially hostile work environment claim under Title VII, 42 U.S.C. § 2000e-2(a)(1), a plaintiff must demonstrate that:

> (1) [ ]he belonged to a protected group, (2) [ ]he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

In assessing Plaintiff's hostile work environment claim, the court may consider "only harassment *based on the [P]laintiff's race.*" *Id.* (emphasis in original). "A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)). "Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Id.* (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007)). And the analysis is limited "to those events that were either perceived by [Plaintiff] or that [he] knew about." *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir. 2012).

25

Plaintiff's claim of racial animus appears to be based on circumstantial rather than direct evidence.  "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Nat'l RR Passenger Corp v. Morgan*, 536 US 101, 116 (2002) (internal citations omitted).

Plaintiff points to three comments which he is asserting are race-based. Plaintiff explains that in July 2020 that then-plant manager Tom McCall asked Plaintiff if he was staying out of trouble and when Plaintiff said that he was, McCall responded "Attaboy, Gayland."  (ECF No. 80-4, PageID.1813).  When asked at his deposition about how this conduct was racially motivated Plaintiff suggested that the comment is racist because "White men generally call a Black man boy.  That's historically racist."  (*Id.*).  Defendants argue that there is no evidence that McCall generally called him "boy" and that in the instance Plaintiff is referring to McCall did not call Plaintiff a boy, but said "attaboy."  (ECF No. 80, PageID.1763).

In his complaint, Plaintiff states that Scion owner Charles Hurches called him a "boy[.]"  (ECF No. 57, PageID.1110).  At Plaintiff's deposition he stated that Hurches asked him and another employee "Hey boys.  How you all doing?"

when they were walking into work at some time after 2019.  (ECF No. 80-4, PageID.1814-15).  Plaintiff does not recall when specifically this interaction occurred.  (*Id.*).

Also at Plaintiff's deposition, he stated that sometime after this lawsuit was filed on September 16, 2020, that Jeff Michalski "was trying to make a joke about playing dodgeboy."  (ECF No. 80-4, PageID.1815).  Plaintiff explained that when he expressed his confusion Jeff said "I mean dodgeball" but Plaintiff asserts Jeff[4] clearly said dodgeboy.  (*Id.*).

Defendants point to Plaintiff's deposition where Plaintiff admits that, since 2019, these are the only alleged racial comments made to him at Scion by anyone in management.  (*Id.*).  Defendants argue that in the Sixth Circuit, three comments in three years are insufficient to support an actionable hostile work environment claim.  Indeed, this circuit "has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory."  *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017)).  "[O]ccasional

---

[4] The undersigned notes that Plaintiff alleges that Michalski responded to his complaints by stating at one point "I thought I put you out to pasture" and on another occasion, that Plaintiff was "getting old on [Michalski]."  (ECF No. 57, PageID.1110; PageID.1096).  The undersigned suggests these comments relate to Plaintiff's age, not his race.  That said, the third element limits the scope of analysis and the Court may consider "only harassment *based on the plaintiff's race*[.]"  *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).  It does not appear these comments were based on race and they are, therefore, not relevant to this analysis.

offensive utterances do not rise to the level required to create a hostile work environment" and "even offensive and bigoted conduct is insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements." *Id.* (further citation omitted).

The frequency of allegedly discriminatory conduct is relatively low here. Plaintiff alleges only three instances racially motivated comments over several years. The severity of the comments are also relatively low,[5] even presuming that Plaintiff's assertion that calling him "boy" was a racist insult. The comments were not physically threatening and do not appear to be humiliating. Nor do the comments appear to have unreasonably interfered with Plaintiff's work performance. As such, the undersigned suggests that Defendants' motion for summary judgment should be **GRANTED** on this claim because there is no dispute on the material facts such that Plaintiff's allegations could rise to the level required for a claim of hostile work environment. (ECF No. 80).

As to Plaintiff's allegations of other purported conduct which could have contributed to a hostile work environment, the allegations appear to lack factual

---

[5] In his response brief Plaintiff includes exhibit 9 which is entitled "[n]oose in Plaintiff's work area and outside back door" and includes a photograph of a noose. (ECF No. 91, PageID.1957-60). As far as this could be evidence of racially motivated discriminatory conduct, Plaintiff does not explain the noose in the body of his response brief nor attribute this conduct to anyone at Scion. Nor is a noose mentioned in his amended complaint. (ECF No. 57). On the basis of the information before the Court, the undersigned cannot contextualize this evidence or speak to the value of it in this case. At the summary judgment stage, Plaintiff may not rely on evidence without explaining the relevance to the case.

support and are merely conclusory assertions of Plaintiff's opinion. At any rate, the undersigned shall briefly discuss these other allegations.

Plaintiff appears to be asserting that Scion delayed his pay. (ECF No. 57, PageID.1121). Plaintiff alleges that he was usually paid on Thursday but that "in an act of retaliation" Scion moved his payday to Friday. (*Id.*). Defendants indicate that Scion moved from using paper paychecks to a pay card system and the change resulted in the delay. (ECF No. 80, PageID.1764). Defendants indicate that this change applied to all Scion employees, regardless of their race. (*Id.*). Plaintiff concedes that the change could have impacted other Scion employees. (ECF No. 80-4, PageID.1815). It appears that Plaintiff's payday has returned to Thursday. (*Id.*).

Plaintiff also claims that other employees received special treatment with respect to time off for vacations or other absences. (*Id.* at PageID.1801-2). Plaintiff does acknowledge that none of his requests for time off or vacations were ever denied. (*Id.*). He also concedes that he does not know of any of the circumstances around other employees' absences from work. (*Id.*). As these allegations appear entirely conclusory, the undersigned suggests that Plaintiff's other allegations of potentially discriminatory behavior are not sufficient to alter the analysis of Plaintiff's claim of hostile work environment.

## II.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Defendants' motion for summary judgment (ECF No. 80) be **GRANTED** and the Defendants be **DISMISSED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

30

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: September 18, 2023          s/Curtis Ivy, Jr.
                                  Curtis Ivy, Jr.
                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on September 18, 2023.


                                  s/Sara Krause
                                  Case Manager
                                  (810) 341-7850